4, 5, 3, Evandro De Lima v. Jefferson B. Sessions III Mr. Long? Good morning. May it please the court, I'd like to reserve two minutes for rebuttal. You may. What this case comes down to is that regardless of the definition of theft that you use, whether it's the federal common law definition, which I argue is the correct definition, or even the BIA's broader definition, which really is not authorized by the statute, either of those definitions, the Connecticut statute, which Mr. De Lima was convicted under, is broader and doesn't fall within the definition of theft crime under either version of federal law. So do you maintain that services are not, in any reasonable sense of the word, a subset of the notion of property? That's correct, Your Honor. Services have never traditionally been included within the definition of property. There's no reason to believe that they are included within the definition. As Congress intended, as the BIA has previously defined it, they're a separate thing from property. Certainly Congress would have the authority to define services as property, but it hasn't done so. What is your support for what I gather is your contention that Congress adopted a, which you might characterize as a traditional common law concept of theft. What's the basis for that position? There's no basis to believe that they didn't. Well, Taylor, the Supreme Court in Taylor specifically projected that exact same type of argument and said we shouldn't necessarily look to the common law. We should look to the extent and expanse of the law as it exists at the time that Congress passed this particular provision. And at the time Congress passed this provision, that was, the common law was the law as it existed. The other definition of theft offered by- Go back to that. What about the model penal code and the statutory law of 21 states that included in the definition of theft offenses, theft of services? Those are not federal law, so those are not the definition that Congress was referencing. If Congress wanted to define theft of services as falling within theft, then it could have done so. It would have been easy for Congress to do so, but it didn't make that distinction. But the Supreme Court has looked to the model penal code in several analogous circumstances in trying to ascertain what Congress meant when it used particular terms in the criminal law. Why is it unreasonable to assume that they would look to the model penal code here? Because theft is something that's fundamentally, it's been in the common law all along. There's been no change to it as it's defined. There are other crimes that are of newer origin. Certainly they would need to be treated differently because there's not a common law definition. There's not as established a common law definition. It's not the same situation as theft, which has always been a crime and is well-defined by the common law. How about this way? If Congress is sitting there and suppose it actually contemplated, let's say it did, contemplated, when we define theft offenses, we should exclude theft of services. What would be the reason or thinking behind wanting to make that distinction? One of the reasons that Congress would want to make that distinction is because it treats fraud offenses differently than theft offenses. And when you get into theft of services, it treats them differently for immigration purposes. When you get into theft of services, it becomes very sticky to define the limits of what's a theft offense and what's a fraud offense. And for a theft offense, it becomes an aggravated felony based on the sentence. For a fraud offense, it becomes an aggravated felony or not based on the amount. So you're suggesting that theft by services would be fraud and we would therefore analyze it under the fraud provisions of the INA? Potentially. I think that there needs to be a clear dividing line between theft and fraud. And using an expansive definition of theft offenses that goes beyond the common law doesn't allow for that clear dividing line. Counselor, let me ask you about the issue of fraud. You raised that in your brief as another example of the over breadth of the Connecticut statute. You were not counseled throughout these proceedings, is that correct? That is correct. When did you enter this case? On the appeal. I did work with Attorney Chang on the BIA appeal, but I didn't enter an appearance at that point. Is it your position that the fraud argument that you now raise on appeal as another example of over breadth, that that was also presented below to the BIA? I'm not sure that it was, but I think it falls within the general issue of over breadth. Well, but we've got pretty strict jurisdictional rules on unexhausted claims. We have no jurisdiction unless the BIA has been presented with an argument. And I've been able to find no indication that that argument was ever made to the BIA. The argument that this statute is, this definition is over broad because of, because the statute of conviction also includes fraud offenses. I think it really is intended to bolster the over breadth argument. Why? Okay. Theft of services versus theft of. Well, you agree that it is not exhausted as an independent argument. Correct. Can I ask you a different question that is of concern to me? And that is, why does this panel have a right to even consider deciding the view of our holding in Leckie? I understand that you're taking a different spin on this offense. But we have a square holding by a panel of this court that this Connecticut statute does constitute, a conviction for it does constitute an aggravated felony. And does the fact that a lawyer comes up with a new spin, does that revivify the issue and allow this panel to avoid the law of the circuit doctrine? Your Honor, Leckie was wrongly decided and that is the reason. But wrongly decided or not, our law is very clear that one panel can't overrule another with some very narrow exceptions. If there's supervening authority, if there's a statutory change, something like that, on the basis of wrongly decided, the en banc court could overrule Leckie. But this panel couldn't overrule the Leckie panel. That's what the law of the circuit doctrine is. And I'm troubled by the notion that just because a party comes in with a little different spin on the same question, that the law of the circuit doctrine somehow can be avoided. Because I think that would seriously erode the very salutary and stabilizing purposes that that doctrine gives us. My time is up. Do you want me to answer that question? Go ahead, yes. There are two reasons. The first is the Moncrief and Mullooly decisions have come down since then and have influenced how the court is supposed to interpret the immigration consequences of criminal convictions. Second is that Leckie dealt with a larceny from the person which doesn't have any chance of including fraud or theft of services. So you're indicating that Leckie did not address the fraud over Beth's claim at all. Is that correct? Correct. Well, Leckie is a second degree. Correct. In this case, it's a third degree. Yes. And the definitions are too different. Yes. They only borrow from 119. And 119 has the problematic radio waves in it. But that was inapplicable in Leckie because it was theft of property from a person. Correct. May it please the Court. Brianne Whelan-Cohen on behalf of the United States Attorney General. It might help us if you just pick up with the last panel that was discussing with counsel whether and to what extent Leckie is binding on us here, which is an important issue for all of us because, as Judge Sellier says, if we've got a binding circuit court opinion, then these three judges lack the authority. We lack the authority to change that. That's right. The government maintains that Leckie does control this issue. There are a couple of small distinguishing factors between the second and third degree larceny, but they're not relevant to the overall question that was presented in Leckie, which is, A, what is the generic definition of larceny as announced by the VA and how that should be applied in this circuit, and, B, whether or not the main elements of the Connecticut larceny statute fit that generic definition. And nothing since Leckie has changed to change either of those two questions. Well, but in terms of the holding of Leckie, under the second degree larceny statute, given its limited need for borrowing in 119, and as the Leckie court observed, there's no need to even consider the radio communications issue because they couldn't be applicable under second degree larceny. How can you say that it didn't make any difference whether the statute otherwise reached larceny? There was no basis. It reached doctor of services. There was no basis under 123A.3, the second degree, for saying that it did. Well, the court did notice that it did not have to go into that list in 119, but it went further and said that they all, regardless, even if they did apply wholesale to this, that they all fit squarely within the board's broad definition. And in coming to that conclusion, this court pointed to two Second Circuit cases, and pointed to the Second Circuit's profound expertise and long experience with Connecticut law and found that because the way that Connecticut courts have interpreted this general larceny statute, the elements are a match. And I think that- Counsel, my understanding is that the petitioner here is arguing that the definition of larceny in the Connecticut statute, 53A.119, by its terms, includes offenses that do not meet the federal definition of a theft offense. My understanding is that the court in Leckie specifically said it was not addressing that argument. The court says, Leckie does not argue that this language, written on its own, encompasses non-theft offenses. In other words, he was not arguing to the Leckie panel that the definition of theft in the Connecticut statute was overbroad. Instead, he focused on all those examples, which he said reflected his overbroad argument. And the court in Leckie addressed and rejected that argument. So it seems to me that the petitioner may be on solid ground in arguing that the position he's advancing here, that the definition of larceny in the Connecticut statute includes non-theft offenses, that that was not addressed in Leckie. That's true. That was not directly addressed in Leckie, although it was addressed by the Second Circuit. And I believe it was Andenbola that addressed that direct question. And they went through a very reasoned discussion about why we need to look at the Model Penal Code and the modern tendency of larceny statutes, which do include theft of services. And just to preface all of this by saying that I think that what is pertinent in Leckie is that it looked to what the general definition is and looked at that preamble in Section 119. And that really sets out what the elements of larceny are in Connecticut. And the Connecticut Supreme Court has gone further to dissect that and list the elements of the wrongful taking or carrying away of personal property of another, the existence of lawless intent of the taker to deprive the owner of property, and the lack of consent of the owner. And so all of that squarely fits within there. Well, you say squarely. Let's look at one corner of your square, which I think is that services equal property. If you don't adopt that equation, you don't have a square. But as I said, the Second Circuit has already addressed that. The modern tendency and what we need to look at when Congress enacted the statute is the modern meaning of theft offense, which is broader than the common law term of theft, that theft of services is included in that definition. And so the court should, as it did in Leckie, defer to the Second Circuit's decision. It's interesting that you're pointing us to the Second Circuit. You're here representing the BIA. And one of the things that puzzles me is we don't have a reasoned decision from the BIA itself on the specific point we're looking at. On the theft of services? Yes. That's correct. And because this case, the board looked at the Second Circuit, they really didn't go much further because the Second Circuit has already given that reason, which is that the modern tendency is to include theft of services. They didn't publish a decision on that issue in this case because they saw it on all fours. As I understand it, the time that they weighed in with a reasoned opinion, it may have set back your argument potentially a little because that's when they said theft involves the taking of property. The taking of property constitutes a theft whenever there is a blah, blah, blah, blah, blah. So you get this property notion in there, not in the statute, but in the BIA's interpretation of the statute. Well, is there any precedent for us resolving an appeal like this by remanding to the BIA to get its views on what theft of services are they including? Are they a theft of defense? Certainly the board does have expertise in defining the term theft of defense, but I don't think the court needs to do that here where the board announced its basic definition of theft of defense in matter of VZS, and this court, unlikely, deferred to that opinion. But that says nothing. I look at that. That doesn't tell me the answer to the question before us. In fact, if anything, if I were to mine in for hints that might even start to go against you unless I view it as not all-encompassing, which perhaps it isn't. By deciding this case, didn't the board, at least by implication, reject the theft of services argument? Yes, in this case it did because that was briefed to the board, and so it considered and rejected that argument in line with its generic definition in VZS. But you haven't argued that we have full-blown Chevron deference simply because it decided this case as opposed to issued a reasoned decision, have you? Well, not in this case. The case before this court is not a published decision, so we probably would not have argued full Chevron. Instead, we pointed to this court's precedent decision in Leckie, which we see is on all fours with the decision before the court now. But we did in Leckie. The question of Chevron deference was certainly addressed by this court, and the court found that the board's definition of the generic term theft defense as defined in 101A43 was warranted deference. So that decision is binding on this panel with regard to... There was no discussion of theft of services in Leckie, correct? I'm sorry? There was no discussion of theft of services in Leckie? There was no discussion of theft of services, although the court did point to the illustrative list at 119, which clearly includes theft of services, and said that they all fit squarely within the definition. And I go back to the preamble at 119... Excuse me. The court in Leckie was focused on the concept of intent, intent to deprive. That was the focus of the Leckie decision, was it not? That is correct. And those examples are consistent with that concept of intent. Is that what the court was saying? That is what the court was saying, but I think in the question of over-breath that when you look at the list of 119 and the court has said that they all fit squarely within the definition, then that's at least instructive to the court in this case, but I would concede that it's not 100% on all fours with regard to the theft of services. Counsel, would you agree that the third degree Connecticut larceny statute includes what has been characterized both by the BIA and by other courts of appeal as fraud offenses rather than classic theft? Would you agree with that? It does include fraud offenses, but the Connecticut courts have construed fraud in a way that still fits within the generic definition, and it comes down to whether or not the property owner has given over the property willingly, and the Connecticut Supreme Court has said that consent that is gained by fraud is not knowing consent at all. So, yes, it includes fraud offenses, but because of the way that the Connecticut courts have described the elements, it's still a categorical match to the board's definition. So it's your position that the decision of the board in Garcia Madruga, where the BIA itself distinguishes between theft and fraud, includes that fraud offenses do not fit within the federal concept of a theft offense, but that no longer applies because of the way the Connecticut Supreme Court has interpreted fraud under Connecticut law? Well, it does not apply to this court's review of de novo of the state law, and also I see that my time is up, but I want to finish the answer if that's okay. The Garcia Madruga left open the question and explicitly noted that it was leaving open the question of what the confines of consent are, and in that case the statute was very narrowly tailored as a strict fraud offense. Here we have a statute that covers a number of offenses, and since the board's decision in Garcia Madruga, it has found that larcenies by extortionate takings do fit the generic definition. So the scope of what the consent issue is, which was the primary issue in Garcia Madruga, was left open by the board, and because the Connecticut courts have said that a taking by fraud is not a taking in which the property is given over with knowing consent, I think this court can address that issue by looking at the state of Connecticut law de novo, and in conjunction with the board's primary statement on the generic definition of theft offenses in matter of VZS. Are you suggesting that it would be appropriate for us to look at the fraud issue? No, because the issue is unexhausted, and that is an issue that the petitioner should have raised to the board so that the board could, if necessary, if it felt necessary, reconcile this question of how Garcia Madruga plays out with regard to the Connecticut theft statute. Could you respond to the point Mr. Long made that theft by services has attributes that may make it more difficult to distinguish from fraud than does classic theft of a rural property? Well, because the theft of services issue was already addressed, I think that the court, excuse me, by the Second Circuit, and because the Second Circuit gave a well-reasoned opinion as to why theft of services still fit within the term theft defense, which is theft defense and not theft or not larceny. It is a broader understanding, and I don't think that there is this, I don't think it's necessarily a problem that the offenses sometimes overlap, and I think numerous courts have recognized that there could be cases where there are cases, statutes that fall within theft defense provisions and also the fraud provisions, that they are not airtight, and the board has certainly said that, that there may be cases in which these two grounds do overlap, and then it's up to the agency to prove the second part of each one, which is the one year in prison or the $10,000 loss. So the overlap I don't think is problematic. Thank you, Your Honors. I think you've dismissed the petition. I just want to state briefly, Your Honors, that the main thrust of the Supreme Court's categorical approach to jurisdiction recently has been to interpret statutes narrowly so that the immigration system is not imposing consequences on immigrants which go beyond what Congress intended to impose, and that's what's at issue here. Well, you're referring to the Supreme Court interpreting a criminal statute to which the INA refers in resolving ambiguities using concepts of lenity and the like. I don't think you've pointed this to any case where the Supreme Court has told us that we are somehow obligated to interpret provisions of the INA itself in that manner, unless I've missed something and you agree. I believe I have, and that's the Fung-Hao Tan case, which is old case law, but there's been no change in the Supreme Court's jurisdiction on that or jurisprudence on that. And I'll yield the rest of my time unless the Court has further questions. Thank you to both counsel.